# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

WILLIAM BAKER,           :
:
      Plaintiff,        :
:     CIVIL ACTION NO.
    v.              :     2:07-CV-0124-RWS
:
RYAN P. MOSKAU,       :
:
      Defendant.     :

## ORDER

Plaintiff William Baker brought this 42 U.S.C. § 1983 action against former Roswell police officer Ryan P. Moskau, alleging that Officer Moskau falsely arrested Plaintiff without probable cause in violation of the Fourth Amendment and Georgia law. This case comes before the Court on Plaintiff's Motion for Contempt [31], Plaintiff's Motion for Partial Summary Judgment [34], and Defendant's Motion for Summary Judgment [44]. After reviewing the entire record, the Court enters the following Order.

### Background

Around midnight of April 1, 2006, Christopher D. Jones, who is not a party to this action and had not met Mr. Baker or Officer Mokau prior to the

incident that gave rise to this action, called the police to report that a man driving a white passenger vehicle was flashing strobe lights built into the rear of his vehicle.  Mr. Jones, who was driving behind the suspect vehicle in a pickup truck on a Roswell city road, provided the dispatcher a tag number and stated that the driver of the vehicle was "pretending like he has police lights."  (Ex. A to Def.'s Mot. for Summ. J. [44]); Moskau Aff. ¶ 16.)  He reported that another car in front of the suspect vehicle had pulled aside into a parking lot to get out of its way.  911 immediately dispatched Officer Moskau to the Roswell street location described by Mr. Jones, and Mr. Jones continued to pursue the suspect vehicle.

Within minutes, Officer Moskau approached Mr. Jones' pickup truck and observed ahead Plaintiff's white 2000 model Pontiac Trans Am with clear strobe lights flashing adjacent to its rear tail lights.[1]  Officer Moskau initiated a

---

[1] Plaintiff disputes that the strobes were flashing immediately prior to Officer Moskau's initiation of the traffic stop.  In his deposition, Plaintiff denies that he intentionally activated the strobe lights, but states that the strobe lights had been activated accidentally on at least one occasion in the past. (Baker Dep. at 10-14.)  The pursuit, traffic stop, and arrest is captured on a video that has been entered into the record.  (See Ex. 2, Notice of Filing Supplemental Documents to Pl.'s Mot. for Summ. J. [35-3].)  Although it is difficult to discern whether the strobe lights on Plaintiff's car were activated during Officer Moskau's short pursuit (because the flashing lights from Plaintiff's car could arguably be reflections of Officer Moskau's police lights), the video later reveals that clear strobe lights were installed into both the front and rear of

traffic stop, which concluded in Alpharetta, Georgia, approximately 1/4 mile outside of the territorial limits of Roswell.[2] After removing Plaintiff from his vehicle, a second Roswell police officer arrived on the scene to assist Officer Moskau. Officer Moskau received consent from Plaintiff to search the vehicle and found a switch box near the gear shift. As he toggled the switches on the switch box, clear-colored strobe lights in the front and rear of Plaintiff's vehicle were activated.[3]

Mr. Jones had also voluntarily stopped on the side of the road when Officer Moskau initiated the traffic stop. Officer Moskau, after confirming the

---

Plaintiff's car that were later activated during the traffic stop by Officer Moskau.

[2] It is not clear whether the traffic stop was initiated within Roswell or Alpharetta, but both parties agree that it was concluded in Alpharetta. Officer Moskau contends that the traffic stop was initiated inside of the City of Roswell and concluded fifty feet inside of the city limits of Alpharetta. However, for purposes of this Order, the Court accepts as true Plaintiff's characterization of the facts; namely, that the stop was initiated and concluded within Alpharetta, Georgia, after a short pursuit.

[3] Although Mr. Baker strains to dispute the evidence of front strobe lights in the record, the video reveals both Officer Moskau and a second Roswell police officer contemporaneously observing and commenting on strobe lights in the front of Mr. Baker's vehicle during the traffic stop. Furthermore, although Mr. Baker has introduced photographs of his vehicle without front strobe lights, he has not provided a foundational affidavit or other sworn testimony providing that the photographs illustrate his vehicle in the same condition as it was on the day of his arrest. Absent such evidence, the Court finds that there is no genuine dispute that Mr. Baker had functional, external strobe lights installed on both the front and rear of his vehicle on the night in question.

presence of the strobe lights on Plaintiff's vehicle, interviewed Mr. Jones, confirming that he was the person who called 911. Officer Moskau also confirmed that Mr. Jones witnessed Plaintiff activate his strobe lights "at another motorist" and confirmed that Plaintiff's vehicle matched the tag number given by Mr. Jones to the 911 operator. (Pl.'s Resp. to Def.'s St. of Mat. Facts ¶ 21.) He provided a written statement to Officer Moskau to similar effect, which has been entered in the record. (Ex. 1 to Pl.'s Mot. for Summ. J. [34-3].)

Officer Moskau discussed the relevant charge with the second police officer, spoke to his supervisor, consulted his copy of the Georgia Code, and confirmed that Plaintiff did not have a permit for strobe lights and was not a public employee. After approximately thirty minutes of investigation, Officer Moskau arrested Plaintiff and charged him with impersonating a public officer in violation of O.C.G.A. § 40-6-395(c). Those charges were later dismissed as a result of Officer Moskau's resignation and failure to give evidence during Plaintiff's first-appearance hearing. This action followed.

Plaintiff initially brought this action in the Superior Court of Forsyth County on September 21, 2007. Officer Moskau removed the action to this Court on October 26, 2007 [1-1]. In his Complaint, Plaintiff alleges false arrest

4

in violation of 42 U.S.C. § 1983 and Georgia law.  (See Compl. [1-2] ¶¶ 27-36.)

Plaintiff seeks compensatory damages, punitive damages, and attorney fees.

## Discussion

Both parties have moved for summary judgment, seeking a court

determination of liability in this action.  Plaintiff seeks judgment as a matter of

law that Officer Moskau falsely arrested Plaintiff without probable cause and

without authority under state law because he did not directly observe Plaintiff's

alleged criminal act and because he arrested Plaintiff outside of his Roswell

jurisdiction.  Plaintiff also seeks judgment on his state law tort claim against

Officer Moskau.  Officer Moskau, on the other hand, contends that he is entitled

to qualified immunity against Mr. Baker's § 1983 claims and official immunity

against Mr. Baker's state law claims.

After discussing the appropriate standard on summary judgment, the

Court takes up the parties' cross motions.

## I.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

AO 72A
(Rev.8/82)

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

6

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. <u>Patton v. Triad Guar. Ins. Corp.</u>, 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (internal citations omitted); <u>see also</u> <u>Matsushita</u>, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.    Plaintiff's § 1983 False Arrest Claim

The Court begins by examining whether either party is entitled to summary judgment on Plaintiff's claim that Officer Moskau violated his constitutional right to be free from arrest without probable cause in violation of

AO 72A
(Rev.8/82)

42 U.S.C. § 1983.  Because Officer Moskau invokes qualified immunity, the

Court must first examine the contours of the qualified immunity doctrine as it

applies against Plaintiff's claim of false arrest.

### A.    Qualified Immunity Standard

Qualified immunity provides "complete protection for government

officials sued in their individual capacities if their conduct 'does not violate

clearly established statutory or constitutional rights of which a reasonable

person would have known.'"  Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th

Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727,

73 L. Ed. 2d 396 (1982)).  Its purpose is to "allow government officials to carry

out their discretionary duties without the fear of personal liability or harassing

litigation, protecting from suit all but the plainly incompetent or one who is

knowingly violating the federal law."  Lee v. Ferraro, 284 F.3d 1188, 1194

(11th Cir. 2002) (internal quotation marks and citations omitted).

Qualified immunity is a question of law for the court.  Post v. City of Fort

Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).  To be entitled to qualified

immunity, the public official "must first prove that he was acting within the

scope of his discretionary authority when the allegedly wrongful acts occurred."

8

Lee, 284 F.3d at 1194.  The burden then shifts to the plaintiff.  Lee, 284 F.3d at

1194.  There is a two-part test to determine whether a defendant is entitled to

qualified immunity.  First, a court asks " 'whether [the] plaintiff's allegations, if

true, establish a constitutional violation.' "  Vinyard, 311 F.3d at 1346 (quoting

Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).

Second, after sufficiently stating a constitutional violation, a court must ask

whether the right was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201,

121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  A right is clearly established if its

contours are "sufficiently clear that a reasonable official would understand what

he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640, 107

S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  The salient question is whether the state

of the law at the time of the alleged violation gave officials "fair warning" that

their acts were unlawful.  Hope, 536 U.S. at 740; Holmes v. Kucynda, 321 F.3d

1069, 1078 (11th Cir. 2003); see also Vinyard, 311 F.3d at 1350-53

(articulating a tripartite analytical framework for ascertaining whether right is

"clearly established").

        In the context of a claim for false arrest, an officer is entitled to qualified

immunity where that officer had "arguable probable cause" to make the arrest.

9

In other words, where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest" the plaintiff, then the officer is entitled to qualified immunity. Davis v. Williams, 451 F.3d 759, 762-63 (11th Cir. 2006) (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004)); see also Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990). What constitutes probable cause to arrest is the information known to the defendant at the time of the arrest, and not the facts "known to the plaintiff then or those known to a court later." Jones, 174 F.3d at 1283 n. 4 (quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)).

   **B.    Officer Moskau is Entitled to Qualified Immunity**

   Plaintiff contends that Officer Moskau falsely arrested him in violation of the Fourth Amendment because he did not impersonate a police officer, and therefore, Officer Moskau could not have had probable cause to arrest Plaintiff for such a criminal act. Citing state law, Plaintiff also contends that Officer Moskau violated his federal constitutional rights by arresting him outside of the City of Roswell and without personally observing the alleged criminal act.

10

Officer Moskau responds that, based on the information available to him at the time of the incident, he had at least an arguable basis to believe that Plaintiff had committed the crime of impersonating a police officer. Furthermore, Officer Moskau contends that he was authorized under the "hot pursuit" exception to make an arrest outside of his jurisdiction, and he was not required to personally observe the criminal act to make a lawful arrest.

Under Georgia law, it is unlawful

> [t]o impersonate a sheriff, deputy sheriff, state trooper, agent of the Georgia Bureau of Investigation, agent of the Federal Bureau of Investigation, police officer, or any other authorized law enforcement officer by using a motor vehicle or motorcycle designed, equipped, or marked so as to resemble a motor vehicle or motorcycle belonging to any federal, state, or local law enforcement agency . . . .

O.C.G.A. § 40-6-395(c)(1).

Impersonating a police officer is a felony under Georgia law. O.C.G.A. § 16-10-23. "One impersonates a peace officer if he (a) falsely holds himself out as a peace officer (b) with intent to mislead another into believing that he is actually such officer." Stewart v. State, 1999, 240 Ga. App. 375, 376, 523 S.E.2d 592, 593 (1999).

11

At the outset, Plaintiff does not dispute that Officer Moskau was acting within his discretionary authority as a police officer for the City of Roswell in effectuating Plaintiff's arrest. He challenges only the lawfulness of the arrest. Therefore, the sole question determinative of Officer Moskau's claim to qualified immunity is whether Officer Moskau had arguable probable cause to arrest Plaintiff for impersonating a police officer. <u>Davis</u>, 451 F.3d at 762-63.

After full consideration of the record in a light most favorable to Plaintiff, the Court concludes that Officer Moskau had an arguable basis to believe that Plaintiff, by activating external automobile strobe lights in traffic, had falsely held himself out as a peace officer with the intent to mislead another motorist to cause that motorist to yield. Probable cause exists if, "at the moment the arrest was made, the facts and circumstances within the officer['s] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." <u>Holmes v. Kucynda</u>, 321 F.3d 1069, 1079 (11th Cir. 2003) (citations and quotations omitted). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." <u>Adams v. Williams</u>, 407 U.S. 143,

149, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972).  Of course, Officer Moskau, to be entitled to qualified immunity, "need not have actual probable cause but only 'arguable probable cause.'"  <u>Montoute v. Carr</u>, 114 F.3d 181, 184 (11th Cir. 1997) (emphasis added).  Because only arguable probable cause is required, "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." <u>Id.</u>  Thus, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (citation omitted).

Here, Officer Moskau could have reasonably, even if mistakenly, concluded that Mr. Baker had committed the crime of impersonating a police officer.  First, Officer Moskau had reason to believe that Plaintiff had falsely held himself out as a peace officer based on the eyewitness account of Mr. Jones, who stated that Plaintiff had used his strobe lights to coerce another motorist to get out of his way.  Mr. Jones' statement was reasonably trustworthy:  Officer Moskau had no reason to discount Mr. Jones' statement because Mr. Jones had no prior contact with either Plaintiff or Officer Moskau

and had no apparent incentive to fabricate such an observation.  Furthermore,

Mr. Jones' account was bolstered by Officer Moskau's own discovery about

Plaintiff's vehicle.  Officer Moskau discovered during the traffic stop that

Plaintiff possessed custom-installed external strobe lights in the front and rear

of his vehicle which could be operated and toggled as Plaintiff was driving.

When activated, the strobes flashed quickly, in a manner similar to police lights.

Although they were clear in color, Officer Moskau could have reasonably

concluded that they "resembled" a motor vehicle belonging to a state law

enforcement agency.[4]  O.C.G.A. § 40-6-395(c)(1).

Plaintiff contends that the arrest was nevertheless a violation of the Fourth

Amendment because Officer Moskau did not witness the crime firsthand.  Plaintiff

is incorrect.  Although Georgia law provides that a police officer is generally

allowed to make a warrantless arrest only if  "the offense is committed in such

officer's presence or within such officer's immediate knowledge," O.C.G.A. §

17-4-20(a), the Georgia Supreme Court has made clear that "[a]n arrest and search,

---

[4] It is not uncommon for fire departments and other state law enforcement agencies
to outfit their emergency vehicles with clear strobe lights. Cf. Stewart, 523 S.E.2d at 593
(rejecting argument that white lights could not resemble police vehicle and concluding
that "[t]he sufficiency [ does not depend upon whether Stewart used flashing blue lights
or flashing white lights, as he testified.")

legal under federal law, [is also] legal under state law." <u>Durden v. State</u>, 250 Ga. 325, 327, 297 S.E.2d 237, 240 (1982). As the Court in <u>Durden</u> reasoned, "if an officer, while in the presence or vicinity of the accused, acquires 'probable cause' (federal) to arrest the accused outside his or her home, and fails to make such arrest, there is likely to be a failure of justice as a matter of law if the officer is required to delay the arrest until a warrant is obtained." <u>Id.</u> Therefore, "an arrest meeting the constitutional requirements of probable cause is valid whether or not O.C.G.A. § 17-4-20 was violated." <u>Bodiford v. State</u>, 169 Ga. App. 760, 760-761, 315 S.E.2d 274, 275 (1984) (citations and quotations omitted).

Moreover, Officer Moskau reasonably relied on a witness statement in support of probable cause. <u>E.g.</u>, <u>McCauley v. State</u>, 222 Ga. App. 600, 601, 475 S.E.2d 669 (1996) (wife's statement to police officer that her husband had struck her was sufficient to create probable cause to arrest defendant); <u>United States v. Williams</u>, 185 F. App'x 866, 870-71 (11th Cir. 2006) (unpublished) (officer had probable cause to believe defendant had committed crime of possession of a firearm by a convicted felon based upon witness statement that he observed the convicted felon placing a shotgun in the car's trunk combined with officer's observation of shotgun shell inside car window); <u>cf.</u> <u>Rankin v. Evans</u>, 133 F.3d

1425, 1441 (11th Cir.1998) (stating that an officer is generally entitled to rely on a victim's criminal complaint as support for probable cause).

Plaintiff also contends that Officer Moskau violated the Fourth Amendment because he conducted an arrest outside of Roswell, his jurisdiction. The Court disagrees. As an initial matter, it appears that Officer Moskau was within his authority under Georgia law to arrest Plaintiff 1/4 mile outside of the City of Roswell under the "hot pursuit" exception. The "hot pursuit" exception applies when a continuous and immediate pursuit of a suspect takes the officer beyond his geographical limits in order to effectuate an arrest. Margerum v. State, 260 Ga. Ct. App. 398, 399, 579 S.E.2d 825, 826 (2003). "It is not necessary for the officer to engage in a high-speed chase of the suspect, nor must the officer turn on his lights and sirens before leaving his jurisdiction in order for the stop to be authorized under the 'hot pursuit' doctrine." Id. Nor must a suspect attempt to flee in order for the "hot pursuit" doctrine to apply. Hastings v. State, 211 Ga. Ct. App. 873, 874, 441 S.E.2d 83, 84 (1994) (arrest made by municipal officer one mile into neighboring jurisdiction lawful under hot pursuit exception despite absence of act of fleeing by suspect). The relevant question is whether the officer was in pursuit and whether the pursuit was

16

immediate and continuous. Indeed, "the officer is not required to arrest the suspect at the first opportunity, but may, and should, wait to stop and arrest the suspect at the first opportunity which is safe for all concerned, the officer, the suspect, and other motorists." Margerum, 579 S.E.2d at 826.

Here, Officer Moskau began a continuous and immediate pursuit within the territorial limits of Roswell after receiving information about a suspect in Roswell who may have been impersonating a police officer. Regardless of whether Officer Moskau caught up to Plaintiff before leaving Roswell, Officer Moskau took reasonable steps to apprehend Plaintiff and engaged in a continuous and immediate pursuit. He was therefore within his authority to effectuate an arrest 1/4 mile outside of his jurisdiction. See United States v. Jackson, 139 F. App'x 83, 2005 WL 1566764, at *2 (10th Cir. 2005) (unpublished) (pursuit which began with civilian's emergency call and voluntary pursuit and ended in arrest by police officer outside of officer's jurisdiction constitutional because officer "took reasonable steps to apprehend the suspect based on the information given to him" and "Sgt. Brock's continuous actions after joining the civilian's pursuit were an extended effort to apprehend the suspect").

17

Even if the Court were to assume that Officer Moskau violated state law by conducting an extra-jurisdictional arrest, however, Officer Moskau would nevertheless be entitled to qualified immunity. First, an arrest by an unauthorized police officer does not amount to a Fourth Amendment violation if it is supported by probable cause. E.g., United States v. Mikulski, 317 F.3d 1228, 1233 (10th Cir. 2003) (holding that warrantless arrest outside of officer's jurisdiction, although violative of state law, did not rise to the level of Fourth Amendment violation because probable cause existed to justify arrest); see also State v. Pinckney, 255 Ga. App. 692, 693, 566 S.E.2d 325, 326 (2002) (holding that arrest by a police officer outside of his jurisdiction is not an illegal arrest if the arrest could have been properly carried out by a private person under the citizen's arrest statute); Glazner v. State, 170 Ga. App. 810, 811, 318 S.E.2d 233, 235 (1984) (same). And, in any event, Mr. Baker has failed to point the Court to any binding authority clearly establishing, for purposes of the qualified immunity analysis, that an extra-jurisdictional arrest that is supported by arguable probable cause violates the Fourth Amendment.

In sum, based upon the eyewitness account of Mr. Jones, the reliability of that account, and Officer Moskau's own observations of the strobe lights

installed on Plaintiff's vehicle, Officer Moskau had an arguable basis to believe

that probable cause existed to arrest Plaintiff for the crime of impersonating a

police officer. Accordingly, Officer Moskau is entitled to qualified immunity.

To the extent that Plaintiff moves for summary judgment on his § 1983 claim,

his Motion is **DENIED**. To the extent that Defendant moves for summary

judgment on Plaintiff's § 1983 claim, his Motion is **GRANTED**.

## III.    Plaintiff's State-Law Tort Claim

Plaintiff and Defendant also move for summary judgment on Plaintiff's

state law false arrest claim.

The Georgia Constitution provides that state officers and employees

"may be liable for injuries and damages [only] if they act with actual malice or

with actual intent to cause injury in the performance of their official functions."

GA. CONST. art. I, § 2, ¶ IX(d). Plaintiff does not dispute that Officer Moskau

was acting in the performance of his discretionary duties as a state official at the

time of the arrest. Thus, to pierce Officer Moskau's official immunity, Plaintiff

must demonstrate that he acted with actual malice. Adams v. Hazelwood, 271

Ga. 414, 520 S.E.2d 896, 898 (1999). The Supreme Court of Georgia has

explained that " 'actual malice' requires a deliberate intention to do wrong and

denotes 'express malice or malice in fact.'" Id. (quoting Merrow v. Hawkins, 266 Ga. 390, 467 S.E.2d 336, 338 (1996) (citation omitted)).

Having thoroughly reviewed the record in a light most favorable to Plaintiff, the Court concludes that no evidence supports the inference that Officer Moskau possessed a "deliberate intention to do wrong" in arresting Plaintiff. Accordingly, Officer Moskau is entitled to official immunity. Insofar as Officer Moskau moves for summary judgment on Plaintiffs' state law claim for false arrest, his Motion is **GRANTED**. Insofar as Plaintiff moves for summary judgment, his Motion is **DENIED**.

## IV.  Motion for Contempt

In his Motion for Contempt, Plaintiff asks the Court to hold non-party witness Christopher D. Jones in contempt for failing to appear for a deposition. However, to date, Plaintiff has been unable to locate Mr. Jones and to serve his Motion for Contempt. By Order dated April 14, 2008 [40], the Court granted Plaintiff's request to defer ruling on Plaintiff's Motion for Contempt until such time as he has located Mr. Jones. Both parties have since filed the instant cross motions for summary judgment, and neither party has asked the Court to delay this case any further pending the discovery or appearance of Mr. Jones.

AO 72A
(Rev.8/82)

In light of the Court's rulings above, Plaintiff's Motion for Contempt [31] is **DENIED as moot**.

## V.     Attorney's Fees & Punitive Damages

Officer Moskau also moves for summary judgment on Plaintiff's prayer for attorney fees and punitive damages. Having concluded that Officer Moskau is entitled to qualified immunity against Plaintiff's § 1983 claim and official immunity against Plaintiff's state law claim, Plaintiff's claims for attorney fees and punitive damages fail as a matter of law.

### Conclusion

For the foregoing reasons, Plaintiff's Motion for Contempt [31] is **DENIED as moot.** Plaintiff's Motion for Partial Summary Judgment [34] is **DENIED**. Defendant's Motion for Summary Judgment [44] is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff in this action.

**SO ORDERED** this  15th  day of December, 2008.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

21